UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

C.C., a minor, individually and  :     Hon. Joseph H. Rodriguez
by his parents, J.C. and M.C.,

        Plaintiffs,      :     Civil Action No. 15-5936

      v.               :       OPINION

Eastern Camden County Regional  :
School District, et al.,

        Defendants.      :

This matter is before the Court after a Complaint was filed, but prior to the filing of an Answer or other responsive pleading, on a motion to approve a settlement between the parties on behalf of a minor Plaintiff [Doc. 13]. The Court held a fairness hearing on September 13, 2016 and the record of that proceeding is incorporated here. Because the Court finds the terms of the settlement not fair or reasonable to the minor, as they provide for attorneys' fees that are grossly disproportionate to the minor's recovery, the motion to approve settlement will be denied.

## Background

The underlying facts asserted in this case occurred in 2013-14 and previously were litigated as the result of a Due Process Petition filed by Plaintiffs on April 22, 2014 with the New Jersey Office of Special Education under docket number EDS 06359-2014 S, agency reference number 2014-

1

2105. The Petition was transmitted to the New Jersey Office of

Administrative Law on May 27, 2014, and on February 19, 2015 the parties

settled their administrative, IDEA-based claim.

The settlement agreement, which was approved by Administrative

Law Judge John F. Russo on May 4, 2015, included the following remedies:

> (a) IEEs to be conducted; (b) a requirement that subsequent
> HIB investigations include a determination as to whether C.C.'s
> alleged conduct was a manifestation of C.C.'s disabilities, or a
> result of C.C.'s unique characteristics and/or disabling
> condition; (c) C.C. be exempt from suspension for exhibiting
> manifestations of his disabilities, to be addressed
> by his PBIP; (d) C.C. to be subject to discipline if he exhibits
> behaviors identified in 20 U.S.C. §§1415(k)(7)(A)-(D); (e)
> Eastern must perform an Manifestation Determination before
> suspension, held within two school days after the incident; (f)
> C.C.'s HIB disciplines to be expunged; (g) Eastern to ensure
> C.C.'s IEP remain current; (h) PBIP to not be used as
> punishment against C.C.; (i) C.C.'s parents to be allowed to
> participate in future questionings or interrogations; (j) Eastern
> to provide individualized counseling goals and objectives; (k)
> C.C. is a member of a protected class under §504 and the ADA.

(Compl. ¶ 68.) Within the terms of the settlement included the following

provision: "Petitioners release Eastern from the claims raised in the

petitions, including attorney's fees and costs, but excluding any civil

claims." (Compl. ¶ 69.) As part of the settlement at the administrative level,

Plaintiffs' attorney Jamie Epstein received attorneys' fees of $98,000.

Plaintiffs state that this amount "was based on a compromise of Mr.

Epstein's estimate of fees for legal services rendered in the administrative

matter[] for 334.3 hours at $400 per hour or $167,150, which was sent to ALJ Russo and Eastern on 1/16/15." (Pl. Aug. 24, 2016 Br., p. 15.)

Plaintiffs filed the Complaint in this Court on August 3, 2015, invoking federal question jurisdiction, and stating that "Plaintiffs' claims for monetary damages, punitive damages, and other relief . . . could not be addressed in the Administrative Law setting," (Compl. ¶ 72). Plaintiffs set forth claims under the Rehabilitation Act, the Americans with Disabilities Act, the NJLAD, 42 U.S.C. § 1983, and the NJCRA, all fee-shifting statutes, as well as a claim of vicarious liability.

No further action was taken in the case. On December 9, 2015, a Notice of Call for Dismissal on January 8, 2016 pursuant to Federal Rule of Civil Procedure 4(m) and Local Civil Rule 41.1(a) was entered on the docket. On December 28, 2015, Plaintiffs, Epstein, and attorney Julie Warshaw entered into a contingency fee agreement whereby Epstein and Warshaw, referred to as "the LAW FIRM," would "seek reimbursement of all allowable attorney's fees beyond the initial [$1,000] retainer [paid by Plaintiffs], if any, from [Defendants] . . . . Additionally, the Law Firm shall be entitled to 25% of any damages awarded net of costs." (Dec. 28, 2015 Retainer Agmt., ¶ 1.) Plaintiffs also agreed that Epstein's hourly rate was $500 and Warshaw's was $425. (Dec. 28, 2015 Retainer Agmt., ¶ 3.) Next,

the Agreement provided, "if we settle your case, you, the CLIENT,

understand and agree, you are responsible for the balance of any remaining

attorney's fees (unless the LAW FIRM is willing to compromise its fees) and

expert's fees and costs not recovered in the settlement. (Dec. 28, 2015

Retainer Agmt., ¶ 5c.) Finally, under a paragraph entitled Co-Counsel

Terms, the Agreement states:

> By 12/30/15, Attorney Warshaw shall file an entry of her
> appearance and shall become lead counsel responsible for all
> aspects of the case and henceforth, Attorney Epstein's role shall
> be limited to consulting to Attorney Warshaw. Attorney
> Warshaw shall also seek both Attorneys' fees. The Attorneys
> must consent to any settlement of their Attorneys' fees. In the
> event CC is awarded damages via litigation or settlement,
> Attorney Warshaw shall distribute 20% of her net attorney fees
> to Attorney Epstein in consideration of this referral.

(Dec. 28, 2015 Retainer Agmt., ¶ 10.)

On December 30, 2015, Julie Warshaw entered her appearance for

Plaintiffs,[1] and Defendants were served on January 6, 2016, terminating the

---

[1] J.C. and M.C. certified, on behalf of C.C., that "[a]t the beginning of this matter, Plaintiffs were represented by Jamie Epstein, Esq. and then a Notice of Appearance was filed on December 29, 2015 by Julie Warhaw, Esq., Warshaw Law Firm, LLC, as attorney for Plaintiffs in this matter. (J.C. Cert., Jun. 21, 2016, ¶ 5; M.C. Cert., Jun. 21, 2016, ¶ 5.) Further, the parents each certified "at all times, I understood and agreed to enter into a contingency fee arrangement for the payment of attorney's fees and that payment to our attorneys would be dependent upon obtaining payment, if any, either by obtaining a settlement from or a judgment against defendants." (J.C. Cert., Jun. 21, 2016, ¶ 13; M.C. Cert., Jun. 21, 2016, ¶ 13.) Nonetheless, each continues to request that the Court allow for payment

Notice of Call for Dismissal. By letter dated March 30, 2016, Warshaw informed the Court that this matter had settled and requested a Friendly hearing.

The May 18, 2016 Settlement Agreement provides for payment to Plaintiffs of $33,400, from which $10,000 is to be paid to the Warshaw Law Firm, LLC and $10,000 to Jamie Epstein, Esquire "to reimburse them for all disbursements, costs and expenses incurred in their representation of Plaintiffs, and to satisfy [their] contingent fees." The Surrogate of Camden County is to hold the net recovery of $13,400 in trust for C.C.

Warshaw states that the $10,000 is a compromised lesser amount which she felt was reasonable based on the total amount of the settlement. (Warshaw Aff., Jun.24, 2016, ¶ 6.) Warshaw cites "extensive time, effort, expertise, negotiation, level of experience, and the difficulty of taking on a case that had been previously handled by another attorney" as justification for her $10,000 fee.

Epstein declared, in support of his proposed fee of $10,000, "[i]n this case, Plaintiffs had no obligation for attorneys' fees meaning I would only

---

from the settlement proceeds of $10,000 each to Epstein and Warshaw for the "reasonable value of the legal services provided," as $20,000 "is fair and reasonable in relation to the amount of time and effort spent on this matter on behalf of Plaintiffs." (J.C. Cert., Jun. 21, 2016, ¶ 14-17; M.C. Cert., Jun. 21, 2016, ¶ 14-17.)

be paid my attorney's fees and costs through the fee shifting provisions of C.C.'s claims." (Epstein Aff., Jun. 26, 2016, ¶ 13.) That is, "the attorney's fee arrangement is 100% contingent and there was no retainer." (Epstein Aff., Jun. 26, 2016, ¶ 26(8).) "C.C.'s parents paid the case costs for the complaint filing fee and courier fee as indicated by my bill (APX 14)."[2] (Epstein Aff., Jun. 26, 2016, ¶ 14.)

Epstein states, "I alone represented C.C. in the administrative action," and "I alone researched and drafted the complaint in this matter, after which Julie Warshaw, Esquire entered her appearance." (Epstein Aff., Jun. 26, 2016, ¶ 15, 16.) He then avers that "[a]fter the complaint was served, Ms. Warshaw and I collaborated as a team on the case thereafter with Ms. Warshaw leading the negotiations with my input, review and comment." (Epstein Aff., Jun. 26, 2016, ¶ 17.) In contrast, Warshaw's affidavit states "[a] significant amount of time and effort went into the negotiations toward a settlement of this matter and *I* spent a great deal of time with my adversary reviewing and rewording several draft settlement agreements." (Warshaw Aff., Jun.24, 2016, ¶ 4.) (Emphasis added.)

---

[2] While said bill lists a $400 filing fee and courier charge of $68.40, these are captioned JE COSTS, with no indication that Plaintiffs already paid them.

Finally, Epstein states: "Regarding my time entries, *I did not record actual time spent*, rather, where applicable, I reduced the actual time to the amount of time I considered to be reasonable to bill my clients were they fee paying clients." (Epstein Aff., Jun. 26, 2016, ¶ 18.) (Emphasis added.)[3] The remainder of Epstein's submission seeks to justify his proposed hourly rate of $500.

While the defense joins in Plaintiffs' application seeking the Court's approval of the settlement, counsel has made clear that "the quantum of counsel fees in connection with the resolution of this matter was [not] negotiated. The resolution between the parties involved the negotiation of a gross settlement amount of $33,400.00. The allocation of that amount as between Plaintiffs and their attorneys was not a negotiated point." [Doc. 18.] Nonetheless, the Settlement Agreement executed on behalf of the defense contained the precise allocation sought by Plaintiffs here.

<u>Discussion</u>

> All proceedings to enter a judgment to consummate a settlement in matters involving minors . . . shall be heard by the court without a jury.  The court shall determine whether the settlement is fair and reasonable as to its amount and terms. . . . The court, on the request of the claimant or the claimant's

---

[3] The use of contemporaneously recorded time records is the preferred practice to verify hours expended by counsel in connection with a counsel-fee application. <u>Webb v. Board of Educ.</u>, 471 U.S. 234, 238 n.6 (1985).

> attorney or on its own motion, may approve the expenses
> incident to the litigation, including attorney's fees.

N.J. Ct. R. 4:44-3. The Court may either approve or disapprove the settlement; it does not have the authority to vary the terms of the settlement, even in the best interests of the minor. Impink ex rel. Baldi v. Reynes, 935 A.2d 808, 813-14 (N.J. Super. Ct. App. Div. 2007).

With respect to an attorney's agreed contingent fee, if it is within the parameters of New Jersey Court Rule 1:21-7(c), it is entitled to approval if not clearly unreasonable in the circumstances or objectionable for other good cause. Modery v. Liberty Mut. Ins. Co., 549 A.2d 867, 869 (N.J. Super. Ct. App. Div. 1988).

> In any matter where a client's claim for damages is based upon
> the alleged tortious conduct of another, . . . excluding statutorily
> based discrimination and employment claims, . . . an attorney
> shall not contract for, charge, or collect a contingent fee in
> excess of the following limits . . . where the amount recovered is
> for the benefit of a client who was a minor  . . . when the
> contingent fee agreement was made . . . the fee on any amount
> recovered by settlement . . . shall not exceed 25%.

N.J. Ct. R. 1:21-7(c)(6). A contingent fee agreement does not limit the fee awardable under a fee-shifting statute. See Szczepanski v. Newcomb Med. Center, 661 A.2d 1232 (N.J. 1995). "Although the underlying purpose of [fee-shifting] statutes may vary, they share a common rationale for incorporating a fee-shifting measure: to ensure 'that plaintiffs with bona

fide claims are able to find lawyers to represent them[,] . . . to attract competent counsel in cases involving statutory rights, . . . and to ensure justice for all citizens.'" New Jerseyans for Death Penalty Moratorium v. New Jersey Dep't of Corr., 883 A.2d 329, 338 (N.J. 2005) (quoting Coleman v. Fiore Bros., 552 A.2d 141, 143 (N.J. 1989)).

In all cases, fees charged or collected must conform to RPC 1.5(a), N.J. Ct. R. 1:21-7(e), which states:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent.

Two especially important factors courts consider in determining a reasonable fee are whether "the case presented problems which required exceptional skills beyond that normally encountered in such cases or the case was unusually time consuming." Wurtzel v. Werres, 493 A.2d 611, 614 (N.J. Super. Ct. App. Div. 1985); Mitzel v. Washington Elec. Corp., 72 F.3d 414, 418 (3d Cir. 1995).

With regard to awarding attorneys' fees in fee-shifting cases, the starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In doing so, courts are to exclude from the determination of the lodestar any hours not reasonably expended, and those deemed "excessive, redundant, or otherwise unnecessary." McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley, 461 U.S. at 434).

Although a court may not reduce a fee petition on its own initiative in the absence of specific objections from the party, Bell v. United Princeton Property, Inc., 884 F.2d 713, 718-19 (3d Cir. 1989), the court may *sua sponte* "reduce requested fees with respect to matters within the judge's personal knowledge." Id. at 719; see also McKenna, 582 F.3d at 459 n.13 ("[I]t should not be overlooked that the awarding of an attorney fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry.").

Where two (or more) attorneys successively have been involved in a representation, the lawyers typically share in contingent fees on a quantum

meruit allocation basis for the reasonable value of the services rendered. Glick v. Barclays De Zoete Wedd, Inc., 692 A.2d 1004, 1010 (N.J. Super. Ct. App. Div. 1997) (respective contribution to result should determine allocation). A quantum meruit fee award is an equitable determination which does not lend itself to "hard and fast rules." LaMantia v. Durse, 561 A.2d 275, 277 (N.J. Super. Ct. App. Div. 1989). When considering a quantum meruit award where a contingent fee must be split between two lawyers, the trial court should consider: (1) "the length of time each of the firms spent on the case"; (2) "[t]he quality of representation"; (3) "the result of each firm's efforts"; (4) "the reason the client changed attorneys"; (5) "[v]iability of the claim at transfer"; (6) and "[t]he amount of the recovery realized in the underlying lawsuit." Id. at 278. "[I]f the predecessor's work, no matter how extensive, contributed little or nothing to the case, then the ceding lawyer should receive little or no compensation." Silvestro v. Groupe Lacasse, Inc., No. A-3968-07T3, 2009 WL 348589, at *2 (N.J. Super. Ct. App. Div. Feb. 13, 2009).

Mindful that public policy favors settlement, the Court is satisfied that the amount of the settlement, $33,400, is fair and reasonable, but its terms are not. This is a unique situation in that it is not the defense

attempting to impose unreasonable or unfair terms, it is the minor-Plaintiff's own counsel.

Pursuant to Third Circuit precedent, the Court gives no significant weight to the affidavits of J.C. and M.C. "The Third Circuit has noted the inherent and inevitable conflict that exists when an attorney seeks a fee pursuant to N.J.R. 1.21-7(f)." <u>King v. County of Gloucester</u>, 483 F. Supp. 2d 396 (D.N.J. 2007) (citing <u>Mitzel</u>, 72 F.3d at 419-20; <u>Burd v. Hackensack Hosp. Ass'n</u>, 477 A.2d 843, 844 (N.J. Super. Ct. App. Div. 1984) ("It is virtually impossible for lay persons to make informed judgments as to the reasonableness of attorneys' contingent fees, since they do not have the experience required to make a comparative evaluation of the factors involved in a particular case . . . .")).

Turning to the time the attorneys spent on the case, essentially Epstein drafted a Complaint in the area of his expertise, using a form of pleading previously filed. <u>See</u> Compl. ¶ 7, referring to the minor as A.S., the initials of Epstein's plaintiff in Civil Action No. 14-147 (NLH). No further action was taken in the case. Because of the inaction, a Notice of Call for Dismissal was entered. Warshaw then entered an appearance and served the Defendants. The case settled within three months, without the filing of a responsive pleading. On the eve of the friendly hearing, both attorneys

updated their time records on the docket. Epstein estimated spending 47.5 hours on this case, at a value of $23,750.00, and Warshaw "billed" 46.5 hours for $19,762.50. Thus, Plaintiffs' attorneys have represented to the Court that the value of their combined 94 hours of legal services they provided in this case is $43,512.50. All of this time was spent on the heels of the administrative proceeding, on which Epstein spent 334.3 hours and for which Epstein received $98,000 from the Defendants. The Court finds that the amount of time logged and resulting fees are disproportionate to the activity reflected on the docket.

The retainer agreement between Plaintiffs, Epstein, and Warshaw provided for attorneys' fees of 25% of any damages awarded net of costs, yet Plaintiffs' lawyers have allocated 60% of the settlement proceeds for themselves. The retainer agreement also provided that after Warshaw entered an appearance, Epstein's role would be limited to consulting and Epstein would be allocated 20% of Warshaw's net attorney's fees resulting from settlement. This is not reflected in the time records provided or in the proposed allocation of settlement proceeds.

Despite the 334.3 hours Epstein had spent on the administrative case, he billed 3.9 hours to review the administrative record in preparing to file the Complaint in this case. Notwithstanding the expertise that prompts

Epstein to charge $500 per hour, he spent an additional 4.7 hours researching the causes of action for the Complaint and 3.1 hours drafting the Complaint, which, as stated above, is of essentially the same form as the complaint filed in Civil Action No. 14-147 (NLH). Epstein previously has been admonished for overcharging in drafting a complaint. See <u>J.L. v. Harrison Twp. Bd. Of Educ.</u>, Civil No. 14-2666, 2016 WL 4430929, *14 n.18 (Aug. 19, 2016) (finding that an experienced attorney could easily draft such a pro forma complaint in 2.5 hours).

Prior to filing the Complaint, almost 4 additional hours were charged, including a half hour to "draft" a legal services agreement with the Plaintiffs which Epstein later charged another half hour to amend. Once the Complaint was filed, Epstein charged to review the cm/ecf e-mail[4] reflecting that he filed the Complaint. After no activity for four months, Epstein next charged to review the Court's Notice of Call for Dismissal for his own failure to prosecute the case.

Of interest, although Epstein claims to be an expert in education law, he saw the need to have Warshaw join him in this matter. In preparing to hand over the case to Warshaw, Epstein billed 5.3 hours, whereas Warshaw

---

[4] It appears he charged 1.2 hours or $600 to review docket entries in the case.

billed 1.9. Despite Warshaw's alleged expertise, Epstein billed $150 to "explain contents of file" to her.

On the day the Complaint finally was served on Defendants, Warshaw billed 6.2 hours to review file and documents; the next day, she billed 4.8 hours to review exhibits and start reviewing transcripts. She charged to draft and file the Summons and proof of service, and then to e-mail Epstein regarding service, and Epstein charged to read her e-mail. After the Complaint was served, Warshaw billed another 12.7 hours leading up to the execution of the settlement agreement, 3.3 hours of which were billed after Warshaw notified the Court that the case had settled. From the time the settlement agreement had been signed until the friendly hearing, Warshaw billed another 14.3 hours.

In contrast to the retainer agreement with Plaintiffs that indicated Epstein would merely consult on the case after Warshaw entered her appearance, Epstein charged another 9.6 hours leading up to the execution of the settlement agreement, 3.6 hours of which were billed after Warshaw notified the Court that the case had settled. "[W]ork expended after the sole source of success was achieved . . . cannot be thought of as having contributed to that success." A.V. v. Burlington Twp. Bd. of Educ., Civil No. 06-1534, 2008 WL 4126254, at *6 (D.N.J. Sept. 3, 2008).

Although Warshaw was to be the lead attorney of record, after she entered her appearance, Epstein charged 8.7 hours to conference with an insurance adjuster, research school board settlements, research release issue, review friendly draft motion papers, and research ordered brief issues. Epstein charged 7 hours for emails and calls with Warshaw that do not even appear on her time records.

Epstein billed 16.3 hours after the settlement agreement was executed, before the friendly hearing. He billed over 3 hours in conjunction with drafting his Affidavit of Services.[5] "Mr. Epstein is very experienced with fee litigation, and he should have used a previous affidavit as a template." C.G. v. Winslow Twp. Bd. Of Educ., Civil No. 12-6278, 2015 WL 7760356, *5 (D.N.J. Dec. 2, 2015)

Thus, after the settlement was finalized but before the Court held a hearing to determine its fairness, Epstein and Warshaw charged the file over 30 hours.[6] The record shows that they consulted together for approximately 8 hours at the combined rate of $925 for a total of $7,400. This was on a case that had no discovery and no defense.

---

[5] Warshaw did not charge for the hour she spent to draft and finalize her Affidavit of Counsel.

[6] Additionally, Epstein listed as his cost the Complaint service courier charge, but the Plaintiffs had already paid that expense.

This is not a case where Plaintiffs received equitable relief at the administrative level that cannot be quantified, but Plaintiff's counsel was not awarded fees. Counsel received attorney's fees and the defense was released from any claim for attorney's fees and costs to the exclusion of civil claims. While couched in claims for damages not awarded at the administrative level, it appears that the instant lawsuit was filed for the purpose of recouping attorneys' fees in addition to the $98,000 already awarded. Within three months of service, the defense offered to settle the case for $33,400. Plaintiffs' attorneys advanced the terms of allocating that sum. Fee-shifting, however, contemplates payment from one's adversary, not the client. To avoid making an application for attorneys' fees that Defendants could challenge, counsel incorporated what they represent to the Court to be "fee-shifting money" into the Settlement Agreement. It is understandable that the school board settled quickly without mounting a defense in order to avoid the fee-generating process of Plaintiffs' counsel. Under the circumstances of the case, however, this places the entire financial burden on the minor. The Court fails to see how doing so advances the public policy underlying fee-shifting. The Court rejects the settlement as not fair and reasonable to the minor. It is the Court's strong suggestion that the parties revisit the terms of the settlement in view of this Opinion.

<u>Conclusion</u>

For these reasons, and in consideration of concerns placed on the record during oral argument, the parties' motion to approve the settlement in this matter will be denied. An appropriate Order will be entered.

Dated: March 29, 2017                    /s/ Joseph H. Rodriguez
                                         JOSEPH H. RODRIGUEZ
                                         U.S.D.J.